1  Michael B. Montgomery, Esq. (CSBN 34310)
2  LAW OFFICE OF MICHAEL B. MONTGOMERY
   2627 Mission Street, Suite #1
3  San Marino, California 91108
   Tel.: (626) 799-0550
4  Fax: (626) 799-0050
5  Email: MBMontgomery@hotmail.com

6
   Joseph C. Maher II, Esq. (CSBN 164117)
7  LAW OFFICE OF JOSEPH C. MAHER
   9025 Wilshire Blvd., 5th Floor
8  Beverly Hills, California 90211
   Tel.: (310) 204-1910
9  Fax: (310) 204-5083
10 Email: jcm222law@yahoo.com

11
12 Attorneys for Plaintiff

13 **UNITED STATES DISTRICT COURT**

14 **CENTRAL DISTRICT OF CALIFORNIA**

15 **WESTERN DIVISION**

16

17 LAUREN SUN,

18                     Plaintiff,

19     vs.

20

21 SIEMENS AG; SIEMENS POWER
   TRANSMISSION AND
22 DISTRIBUTION, LLC;
   SIEMENS CORPORATION USA;
23 VELPANUR RAMASWAMI;
   AND DOES 1 THROUGH 50,
24 inclusive,

25

26                     Defendants.

27

28

Case No.:

CV10-00174 DDP (PJWx)

**COMPLAINT FOR:**

1. **BREACH OF CONTRACT**
2. **BREACH OF THIRD PARTY BENEFICIARY CONTRACT**
3. **CONVERSION**
4. **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
5. **FALSE LIGHT**

**JURY TRIAL DEMANDED**

- 1 -

Plaintiff alleges as follows:

**THE PARTIES**

1.      Plaintiff LAUREN SUN ("SUN") is an American citizen residing in California.

2.      Defendant SIEMENS AG ("AG") is a German Corporation, with its principal place of business in Munich, Germany.  Defendant AG has continuous and substantial contacts within the State of California, and conducts extensive business, marketing and commerce in this State and District.  AG exerts direct control over American operations and operations in the State of California.  AG directly identifies, utilizes and fund investments in the State of California to play a key role in implementing AG's stated goal of a global network of innovation, partners and businesses.  There are primary offices located in this State, and the State of California has been a key business target direct of AG.

3.      Defendant SIEMENS POWER TRANSMISSION AND DISTRIBUTION, INC. ("PTD") is a Delaware Corporation with its principal place of business in Raleigh, North Carolina.  Defendant PTD has continuous and substantial contacts within the State of California, and conducts extensive business, marketing and commerce in this State and District, and maintains manufacturing facilities in San Jose, California.  PTD is a wholly owned subsidiary of Defendant Siemens AG.  PTD transacts business under the direct operational control of AG (global, regional/ hemispheric, regional/international, national, state, local).

4.      Defendant SIEMENS CORPORATION USA ("SCU") is a Delaware Corporation with its principal place of business in New York, New York.  Defendant SCU has continuous and substantial contacts within the State of California, and conducts extensive business, marketing and commerce in this State and District.  SCU is a wholly owned subsidiary of Defendant Siemens AG and is the parent corporation of PTD.  SCU transacts business under the direct operational control of AG (global, regional/hemispheric, regional/international, national, state, local).

5.     VELPANUR RAMASWAMI is a citizen of Switzerland, residing in India and China.

6.     Plaintiff's investigation is continuing and Plaintiff will amend the Complaint to add further defendants as information becomes available.  The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendant DOES 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each DOE Defendant herein is liable to Plaintiff for the acts and omissions alleged herein below, and the resulting injuries to Plaintiff, and damages sustained by Plaintiff.  Plaintiff will amend this complaint to allege the true name and capacities of said DOE Defendants when the same is ascertained.

7.     Plaintiff is informed and believes and based thereon alleges that at all times mentioned herein Defendants and DOES 1 through 50, and each of them, inclusive, were the successor-in-interest/business/or a portion thereof, predecessor-in-interest/business/or a portion thereof, assign, parent, subsidiary (either wholly or partially owned by, or the whole or partial owner), affiliate, partner, co-venturer, alter ego, agent, servant, employee, and/or co-conspirator of the other Defendants and DOE Defendants, such that Defendants' wrongful conduct makes it inequitable to evade wrongdoing by asserting fictional legal separateness, and when to recognize legal separateness would aid in the commission of the wrongdoings.

8.     Plaintiff is informed and believes and based thereon alleges that at all times mentioned herein Defendants and DOES 1 through 50, and each of them, inclusive, were acting within the course and scope of its/his/her/their authority (either global, regional/hemispheric, regional/ international, national, state or local, either separate or interlocking or both) as the agent, servant, employee, board member or officer and/or co-conspirator of the other Defendants and DOE Defendants and participated with the other Defendants in doing the things alleged herein, such that Defendants' wrongful conduct makes it inequitable to evade wrongdoing by asserting

fictional legal separateness, and when to recognize legal separateness would aid in the commission of the wrongdoings.

9.      Plaintiff is informed and believes and based thereon alleges that at all times mentioned herein Defendants and DOES 1 through 50, and each of them, inclusive, are jointly and severally liable to Plaintiff for the damages sustained as a proximate result of its/his/her/their conduct (either global, regional/hemispheric, regional/ international, national, state or local, either separate or interlocking or both) and that each and every act or omission of any Defendant and DOE Defendant herein was agreed and/or ratified, expressly and/or impliedly, by each of the other Defendants and DOE Defendants herein, and each Defendant and DOE Defendant herein accepted the benefits of the acts of the other Defendants, such that they are in some manner responsible for the acts and omissions complained of herein, such that Defendants' wrongful conduct makes it inequitable to evade wrongdoing by asserting fictional legal separateness, and when to recognize legal separateness would aid in the commission of the wrongdoings.

10.      Siemens' American Depository Shares trade on the New York Stock Exchange ("NYSE") under the symbol "SI".

11.      Prior to a recent reorganization and during the time of wrongdoings set forth in this complaint, AG operated through a complex array of business groups and regional companies.  The business groups are divisions within AG and are not separate legal entities.  The regional companies are wholly-or partly-owned subsidiaries of Siemens.  The thirteen principal business groups during the relevant period were: Communications ("COM"), Siemens Business Services ("SBS"), Automation and Dives ("A&D"), Industrial Solutions and Services ("I&S"), Siemens Building Technologies ("SBT"), Power Generation ("PG"), Power Transmission and Distribution ("PTD"), Transportation Systems ("TS"), Siemens VDO Automotive ("SV"), Medical Solutions ("MED"), Osram Middle East, Siemens Financial Services

("SFS"), and Siemens Real Estate ("SRE").  In 2008, Siemens reorganized the groups into three Sectors - Energy, Healthcare and Industry.

12.    Plaintiff is informed and believes and based thereon alleges that Defendant AG has recently undertaken attempts to restructure its global operations and business groups to establish separateness, in order to evade liability; but by AG's direct influence, power, management, control and dominion over all its companies, is such that any company with the Siemens' family of companies is an instrumentality and conduit of the parent company AG.

13.    Plaintiffs refer to all Defendants in this Complaint, named or unnamed, collectively, as "Defendants."

## JURISDICTION AND VENUE

14.    This Court has diversity jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. Sec. 1332.

15.    The amount in controversy exceeds $75,000.00.

16.    Venue is proper pursuant to 28 U.S.C. Sec. 1391(a) and (c).  Defendants regularly transact extensive business in this State and District.

17.    California has a pronounced interest in applying California law to a dispute involving its citizens with defendants who strategically, directly and regularly transact extensive commerce within the State and District.

## NATURE OF DISPUTE

### A.

### BUSINESS RELATIONSHIP BETWEEN THE PARTIES

18.    For over six years, the parties worked together on power transmission projects in China.  In each and every instance of contracts between the parties, Defendants specifically sought, requested and enlisted Plaintiff's unique business services.  Plaintiff had special unique knowledge, relationships, contacts, cultural and language abilities that Defendants recognized they needed and desired in order to identify business projects and to negotiate and close contracts for such projects.

1    Defendants and others have confirmed and admitted this on many occasions over the years.

2        19.    This litigation involves successive prior executed expense and

3    commission contracts, resulting in Defendants' breach of a success commission

4    payment due and owing to Plaintiff.  This litigation also involves Defendants casting

5    Plaintiff in a false light to deflect blame away from Defendants' corrupt practices in

6    China and place the blame unto Plaintiff.

7        20.    Starting in 2002, there was a contractual pattern and course of conduct

8    between the parties steadfastly developed and implemented by Defendants for each

9    business project that enlisted Plaintiff's services.  A contractual arrangement whereby

10   two separate and independent contracts were entered into with Plaintiff, as follows,

11       (a)    Defendants engaged Plaintiff's general services by an initial stand alone

12   and independent contract for expenses/costs (hereafter "Contract 1").  Here,

13   Defendants contractually limit Plaintiff's authority typically to market research,

14   identifying opportunities and establishing local contacts. Contract 1 was either oral or

15   written at the request and/or direction of Defendants; and

16       (b)    Thereafter, the Defendants utilized Plaintiff's specific services by a stand

17   alone and independent contract for a "success commission" (hereafter "success

18   commission") for negotiating and closing contracts with end users on particular

19   projects (hereafter "Contract 2").  Here, Defendants required of Plaintiff new and

20   additional services that were separate and distinct from Contract 1; and Plaintiff's role

21   and responsibilities were such that Plaintiff went from a general freelance relationship

22   (with no apparent face of authority to negotiate and bind on behalf of Defendants), to

23   a specific Siemens company agent role (with an apparent face of authority to bind,

24   negotiate and close project contracts based on Defendants' instructions).  Contract 2 in

25   all cases was an oral contract at the request and/or direction of Defendants.

26       21.    The contracts between the parties and which are at issue here, are English

27   language contracts, discussed and negotiated in English, as it is the regular course and

28   conduct of Defendants to contract in the English language.

22.     This arrangement worked in every instance for the prior executed Contract 1s and Contract 2s for the following South China Power Grid projects: "Gui Zhou-To-Guang Dong-Line 1"; "Gui Zhou-To-Guang Dong-Line 2"; and "Ling Bao". It also worked in achieving the immensely successful result in the "Yun Guang HVDC" and "Xilou Du HVDC" projects.  (It is here that Defendants accepted the benefits of Plaintiff's performance under both Contract 1 and Contract 2, without Defendants' performance of payment to Plaintiff her success commission under Contract 2).

23.     During Plaintiff's performance under all contracts, there was never any doubt (either by Defendants or by Chinese Power and Ministry authorities who have all admitted the same) as to: (i) the quality of Plaintiff's services, (ii) the uniqueness in which Plaintiff was instrumental to Defendants' success in the Southern China Power Grid projects, and (iii) Plaintiff's loyalty and availability to Defendants (literally 24/7/365 worldwide).

24.     The prior executed contracts are material as constituting an established course and pattern of practice, action, trust, reliance, loyalty and results, on which Plaintiff relied.  The relationship ended when Defendants failed to pay Plaintiff her success commission on the "Yun Guang HVDC" and "Xilou Du HVDC" projects, and when Defendants cast Plaintiff in a false light to deflect blame away from Defendants onto Plaintiff for Defendants' own corrupt practices.

## B.

## PRIOR EXECUTED CONTRACTS

### 1. THE "GUI ZHOU-TO-GUANG DONG-LINE 1" PROJECT

25.     On or about early to middle 2002, Plaintiff was engaged by Defendants as a business consultant for the Defendants' market development in Power Transmission Development and related business in China.  Plaintiff and Defendants entered into the two contract arrangement.  Both Contract 1 for expenses and Contract 2 for the success commission were in the form of an oral contract.  Both Contract 1

and Contract 2 were confirmed by subsequent writings and performance, between Defendants and Plaintiff.  There is no choice of law or venue provisions.

26.  <u>The terms of Contract 1 were</u>:

(a)  Plaintiff was to provide to Defendants: (i) formal and informal liaison activities to help Defendant cultivate business contacts within China, and (ii) market intelligence and identify potential business opportunities in China.

(b)  In return, Defendants were to pay, and did pay, Plaintiff a monthly expense fee of $2,000 USD.

27.  In consideration of Defendants' promise to pay the monthly expense, Plaintiff expended substantial time, resources and money to perform; and Plaintiff did so perform under Contract 1.

28.  Plaintiff's performance of her services under Contract 1 was a good and valuable performance, and the benefits of such performance were received, utilized and recognized by Defendants as superior in all facets for which Plaintiff was hired.

29.  <u>The terms of Contract 2 pursuant to the oral agreement between Defendants and Plaintiff were</u>:

(a)  Plaintiff was to: (i) specifically work on negotiating the contract terms with contract end users for the "Gui Zhou-To-Guang Dong-Line 1" project; (ii) perform such work exclusively as an agent and employee of Defendants; (iii) perform such work according to specific orders of Defendants; (iv) perform such work under the direction of Defendant Velpanur Ramaswami; and (v) perform such work on the timetable, hours and locations as dictated by Defendants.

(b)  In return, Defendant was to, upon completion of the "Gui Zhou-To-Guang Dong-Line 1" contract negotiation with end users, pay to Plaintiff a success commission of the gross sale price.

30.     In consideration of Defendants' promise to pay the success commission, Plaintiff expended substantial time, resources and money to perform; and Plaintiff did so perform under Contract 2 and negotiated and closed the "Gui Zhou-To-Guang Dong-Line 1" project.  Defendants were paid by the end contract users for this "Gui Zhou-To-Guang Dong-Line 1" project.

31.     Plaintiff's performance under Contract 2 was a good and valuable performance, and the benefits of such performance were received, utilized and recognized by Defendants as superior in all facets for which Plaintiff was hired. Defendant paid Plaintiff a success commission of $850,000 USD under Contract 2.

32.     Thereafter, based on Plaintiff's performance, Defendants offered to Plaintiff another contract to continue their relationship with Plaintiff.

### 2. THE "GUI ZHOU-TO-GUANG DONG-LINE 2" PROJECT

33.     On or about October 30, 2003, Plaintiff was engaged by Defendants as a business consultant for the Defendants' market development in Power Transmission Development and related business in China.  Plaintiff and Defendants again entered into the same contractual arrangements for expenses and the success commission, and these arrangements were in place and used for the "Gui Zhou-To-Guang Dong-Line 2" project and the "Ling Bao" project.  Here, Contract 1 was in the form of a written contract for expenses entitled "Business Consultant Contract Between Siemens AG, Erlangen (Hereafter referred to as the Company) And Business Leader Limited (Hereinafter referred to as the Consultant)."  Contract 2 was in the form of an oral contract for the success commission.  Both Contract 1 and Contract 2 were confirmed by subsequent writings and performance, between Defendants and Plaintiff.  There is no choice of law or venue provisions.

34.     The terms of Contract 1 were:

(a)     Paragraph 1 states, the contract should govern the responsibilities to the parties.

(b)   Paragraph 2 states, Plaintiff is to provide to Defendants: (i) formal and informal liaison activities to help Defendant cultivate business contacts within China, (ii) information about public political leaders so that Defendants could participate in public activities involving said leaders; (iii) market intelligence and identify potential business opportunities in China; (iv) reports on the above.

(c)   Paragraphs 3 and 5 state that Defendants are to pay Plaintiff a monthly fee of $9,500 USD to cover her costs under the contract and that Defendants would also pay separately for travel expenses under the contract.

(d)   The contract had an effective life of November 1, 2003 until October 31, 2005 unless sooner terminated (Paragraph 6).

(e)   Paragraph 4 requires that both parties comply with all laws and regulations, and provided that Plaintiff could not bind the Defendant to contracts.

35.   In consideration of Defendants' promise to pay costs and expenses, Plaintiff expended substantial time, resources and money to perform; and Plaintiff did so perform under Contract 1.

36.   Plaintiff's performance of her consulting services was a good and valuable performance, and the benefits of such performance were received, utilized and recognized by Defendants as superior in all facets for which Plaintiff was hired. Defendant paid Plaintiff the monthly cost fee of $9,500 USD under Contract 1.

37.   The terms of Contract 2 pursuant to the oral agreement between Defendants and Plaintiff were:

(a)   Plaintiff was to: (i) specifically work on negotiating the contract terms with contract end users in the "Gui Zhou-To-Guang Dong-Line 2" project; (ii) perform such work exclusively as an agent and employee of Defendants; (iii) perform such work according to specific orders of

Defendants; (iv) perform such work under the direction of Defendant Velpanur Ramaswami; and (v) perform such work on the timetable, hours and locations as dictated by Defendants.

(b)     In return, Defendant was to, upon completion of the "Gui Zhou-To-Guang Dong-Line 2" contract negotiation with end users, pay to Plaintiff a success commission of the gross sale price.

38.     In consideration of Defendants' promise to pay the success commission, Plaintiff expended substantial time, resources and money to perform; and Plaintiff did so perform under Contract 2 and negotiated and closed the "Gui Zhou-To-Guang Dong-Line 2" project.  Defendants were paid by the end contract users for this "Gui Zhou-To-Guang Dong-Line 2" project.

39.     Plaintiff's performance under Contract 2 was a good and valuable performance, and the benefits of such performance were received, utilized and recognized by Defendants as superior in all facets for which Plaintiff was hired. Defendant paid Plaintiff a success commission of $1,000,000 USD under Contract 2.

40.     Thereafter, based on Plaintiff's performance, Defendants offered to Plaintiff another contract to continue their relationship with Plaintiff.

### THE "LING BAO" PROJECT

41.     On or about the middle of 2005, Plaintiff and Defendants were performing under and did perform under Contract 1, as alleged in paragraphs 33 through 36 above.

42.     At this time Plaintiff was engaged by Defendants by an oral contract for Plaintiff's specific services and negotiation with the "Ling Bao" project.  This contract was the Contract 2 oral contract for Plaintiff's success commission.  This contract was confirmed by subsequent writings and performance, between Defendants and Plaintiff. There is no choice of law or venue provisions.

43.     Mr. Wilfred Breur of Defendant Siemens, traveled specifically to Beijing to meet with Plaintiff to enter into and initiate performance under this oral contract.

44.    The terms pursuant to the oral agreement between Defendants and Plaintiff were:

    (a)    Plaintiff was to: (i) specifically work on negotiating the contract terms with contract end users in the "Ling Bao" project; (ii) perform such work exclusively as an agent and employee of Defendants; (iii) perform such work according to specific orders of Defendants; (iv) perform such work under the direction of Defendant Velpanur Ramaswami; and (v) perform such work on the timetable, hours and locations as dictated by Defendants.

    (b)    In return, Defendant was to, upon completion of the "Ling Bao" contract negotiation with end users, pay to Plaintiff a success commission based upon the gross sale price.

45.    In consideration of Defendants' promise to pay the success commission, Plaintiff expended substantial time, resources and money to perform; and Plaintiff did so perform under this oral contract and negotiated and closed the "Ling Bao" project. Defendants were paid by the end contract users for this "Ling Bao" project.

46.    Plaintiff's performance under this oral contract was a good and valuable performance, and the benefits of such performance were received, utilized and recognized by Defendants as superior in all facets for which Plaintiff was hired. Defendant paid Plaintiff a success commission of $300,000 USD under this contract.

47.    Thereafter, based on Plaintiff's performance, Defendants offered to Plaintiff another contract to continue their relationship with Plaintiff.

### 3. THE "YUN GUANG HVDC" AND "XILOU DU HVDC" PROJECTS

48.    On or about January 2006, Plaintiff was engaged by Defendants to provide consultant services for Defendants' market development of Power Transmission Development in China on two concurrent and simultaneous projects – the "Yun Guang HVDC" project involving China Southern Power Grid Co., Ltd. as the end contract user, and the "Xilou Du HVDC" project involving State Grid

Corporation of China as the end contract user.  Plaintiff and Defendants again entered into the same contractual arrangements for expenses and the success commission for both projects.  Here, Contract 1 was in the form of a written contract for expenses pursuant to an untitled letter agreement between Defendants and Plaintiff.  Contract 2 was in the form of an oral contract for the success commission.  The terms of both Contract 1 and Contract 2 were set and ratified by Uriel Sharef in his capacity as a director, officer, board member, uber executive, uber manager, managing consultant with authority and on behalf of and for Defendants AG, PG, PTD and SCU which was ratified by Defendants and confirmed by subsequent writings, and meetings and performance between Defendants and Plaintiff.

49.   The terms of Contract 1 were:

(a)   Paragraph 1 states, Plaintiff is employed in the field of marketing and is to provide to Defendants: (i) establish and hold liaison activities to help Defendant cultivate business contacts within China by establishing contacts with Chinese authorities, (ii) market intelligence and identify potential business opportunities in China; and (iii) furnish reports on the above.

(b)   Paragraphs 2, 3, 11 and 13 state Plaintiff's work is freelance and not as an employee, and that any modification of the contract shall be in writing.

(c)   Paragraph 4 states that Plaintiff is to work with Siemens representative, Velpanur Ramaswami (who is also a named defendant in this lawsuit).

(d)   Paragraphs 5, 6 and 12 state that: (i) Defendants receive the results of Plaintiffs work under this contract; (ii) Plaintiff is to submit documents/finished work for evaluation; and (iii) upon completion, Plaintiff is to return documents received in connection with the work.

(e)   Paragraph 7 states, Defendants are to pay Plaintiff a flat lump sum fee of $60,000 USD per year for 2006 and 2007, and from 2008 forward,

Defendants are to pay Plaintiff $60,000 USD Plaintiff on a yearly basis; and Paragraph 9 states that from the lump sum payments Plaintiff will pay her own costs of performance, and Defendants will additionally pay travel expenses.

(f)     Paragraph 10 states that Plaintiff will pay all relevant German taxes related to the contract.

(g)     Paragraph 14 states that German law shall apply to the letter agreement and venue shall depend on the location of the principal's offices.

50.    In consideration of Defendants' promise to pay costs and expenses, Plaintiff expended substantial time, resources and money to perform; and Plaintiff did so perform under Contract 1.

51.    Plaintiff's performance under Contract 1 for both projects was a good and valuable performance, and the benefits of such performance were received, utilized and recognized by Defendants as superior in all facets for which Plaintiff was hired.  Defendant paid Plaintiff an initial non-refundable lump sum payment of approximately $400,000.00 USD under Contract 1.

52.    <u>The terms of Contract 2 pursuant to the oral agreement between Defendants and Plaintiff were</u>:

(a)     Plaintiff was to: (i) specifically work on the negotiating the contract terms with contract end users in the "Yun Guang HVDC" and "Xilou Du HVDC" projects; (ii) perform such work exclusively as an agent and employee of Defendants; (iii) discontinue previous Siemens and other freelance work if applicable; (iv) perform such work according to specific orders of Defendants; (v) perform such work under the direction of Uriel Sharef and Velpanur Ramaswami and (vi) perform such work on the timetable, hours and locations as dictated by Defendants.

(b)     Defendant was to, upon completion of the "Yun Guang HVDC" and "Xilou Du HVDC" contract negotiation with end users, pay to Plaintiff a success commission of 1% of the gross sale price.

(c)     There is no choice of law or venue provisions.

53.     In consideration of Defendants' promise to pay the success commission, Plaintiff expended substantial time, resources and money to perform and Plaintiff did so perform under the Contract 2 and negotiated and closed the "Yun Guang HVDC" project.  Likewise, Plaintiff expended substantial time, resources and money to perform and Plaintiff did so perform under the Contract 2 and fully negotiated all material and foundational bid and deal points for the "Xilou Du HVDC" project which closed shortly after Plaintiff was forced to resign as alleged below.  Even though Defendants forced Plaintiff to resign, after that time Defendants still contacted Plaintiff for her input and business expertise to finish and close the "Xilou Du HVDC" project.  Defendants were paid in excess of $800,000,000.00 by the end contract users for the "Yun Guang HVDC" and "Xilou Du HVDC" projects.

54.     Plaintiff's performance under Contract 2 was a good and valuable performance, and the benefits of such performance were received, utilized and recognized by Defendants as superior in all facets for which Plaintiff was hired. Defendants, however, have not paid Plaintiff her earned success commission of not less than $8,000,000 USD under Contract 2 despite repeated promises to do so.

### C.

### BREACH OF THE "YUN GUANG HVDC" AND "XILOU DO HVDC" PROJECTS SUCCESS COMMISSION PAYMENTS

55.     After obtaining and utilizing Plaintiff's performance under Contract 2, Defendants, and DOES 1 through 50, and each of them, inclusive, breached their obligations under the contract by:

(a)     Stalling Plaintiff along with promises to pay Plaintiff the success commission as promised, notwithstanding, that Defendant Siemens, by

and through its agent with authority, Wilfred Breur, acknowledged in writing and orally that Plaintiff was to be paid the success commission;

(b)   Continued failure to pay Plaintiff's success commission;

(c)   Expressly promising to pay Plaintiff the success commission by August 2008, if Plaintiff would submit a letter of resignation of Plaintiffs' services as a consultant, which Plaintiff did on April 10, 2007, in reliance upon Defendants' promise;

(d)   Defendants failed to pay the success commission by August 2008, as promised, but Defendants by and through its agent with authority, Wilfred Breur, acknowledged the obligation in writing on July 31, 2008, in that Defendant Velpanur Ramaswami would "handle" the success commission on behalf of Siemens;

(e)   Defendants continue to fail to pay the earned success commission to Plaintiff, and instead directed Plaintiff to Defendant Velpanur Ramaswami for payment of the success commission.

56.   To date, Plaintiff has not been paid the said success commission due.

57.   Siemens' and Ramaswami's actions in failing to pay Plaintiff her success commission are also related to Siemens deflection of blame (i.e., that Plaintiff engaged in the illegal payment and/or was the conduit for the illegal payment of bribes to Chinese officials on behalf of Siemens in connection with Siemens power and energy projects in South China) onto Plaintiff to cover Defendants own corrupt actions.

## D.

## <u>FALSE LIGHT</u>

58.   Despite the incredible work by Plaintiff in opening the Chinese business power market to Siemens and helping Siemens to establish its new footprint in China, when times turned bad for Siemens (i.e., public indictments in the U.S., Germany, and the U.K. with the discovery of endemic, systemic and worldwide Siemens corruption),

1   Siemens turned on Plaintiff.

2   59.   That Defendants had been charged with and pled guilty to unprecedented

3   charges of corporate corruption and pled guilty to failing to maintain adequate

4   corporate control and books and records and pled guilty to conspiracy to violate the

5   United States Foreign Corrupt Practices Act (FCPA).  In 2008, early 2009 Siemens

6   paid fines of over USD 450 million to the U.S. Department of Justice, and paid USD

7   350 million to settle a lawsuit brought by the Securities and Exchange Commission

8   (SEC) for violations of the FCPA.  And, approximately during this same time period,

9   in Munich, the German Government public prosecutor issued and Siemens accepted a

10  fine of € 395 million for failure to supervise corporate operations on the same basis as

11  set forth in the U.S.  To date, in Germany, public prosecutions of officers and

12  directors of Siemens continues.

13  60.   Siemens (as well as Ramaswami) has sought to deflect blame for its own

14  corrupt actions onto Plaintiff.  This deflection of blame by Siemens onto Plaintiff was

15  and is, to wit, that Plaintiff engaged in the illegal payment and/or was the conduit for

16  the illegal payment of bribes to Chinese officials on behalf of Siemens in connection

17  with Siemens power and energy projects in South China.  This deflection of blame

18  was published by Defendants to others in the same personal and business circles and

19  related industries causing Plaintiff to be cast in a false light in her personal life,

20  business and business relationships, past present and future.

21  61.   Defendants have engaged in this deflection upon Plaintiff to quiet

22  Plaintiff and cause Plaintiff physical, emotional and financial pain.

23  62.   Defendants knew and had actual knowledge, at all times including before

24  publishing, and at the time of publishing and subsequent to publishing, that

25  Defendants deflection of blame onto Plaintiff was false.  Siemens through its chain of

26  command from the operations in China to the board rooms in the United States,

27  Canada and Germany from Defendant Velpanur Ramaswami to Wilfred Breur to Udo

28  Niehage to Uriel Sharef monitored and/or were informed of the results of such

1   monitoring of the bank accounts of Defendant Ramaswami with whom Siemens had

2   transferred very large monetary deposits.  Defendants knew that Plaintiff was not in

3   the receipt of any funds for purposes about which Siemens published.  Defendants

4   also knew the bribes were not paid as Defendants published, and to date, Plaintiff is

5   informed and believes, and based thereon alleges, that the money is still in possession

6   of Defendant Ramaswami and monitored by Defendant Siemens.

7        63.    These acts were done in an effort to deflect blame upon Plaintiff so as to

8   conceal knowledge by the chain of command of Siemens agents, executives and board

9   members as to other matters relating to power projects in South China, namely, an

10  effort to conceal Siemens price-fixing and territory division, together with co-

11  defendant Ramaswami, of southern and northern power markets in China.  Siemens

12  has engaged in an elaborate anti-trust division of territories in China such that by

13  mutual agreement, Siemens controls the southern power contracts in China and the

14  Swiss company ABB controls the northern power contracts in China.

15       64.    Siemens uses the services of codefendant Ramaswami as a consultant to

16  bid on power contracts in China.  Ramaswami, who has a Swiss passport, coordinates

17  the bids with his liaison contacts with ABB so that the appearance of competitive

18  bidding is set forth in Siemens and ABB bids for power contracts, in that the

19  competing bids never vary by more than a couple of percentage points.  The bidding

20  transactions for the last four contracts for high voltage power distribution in China

21  bear this out and have been divided exactly in this manner.  From 1996 to 2007 the

22  northern / southern division has been as follows:

23              i.   Tianshenqiao-Guangzhou HVDC project (Siemens)

24              ii.  3G-Changzhou HVDC project (ABB)

25              iii. 3G-Guangdong HVDC Project (ABB)

26              iv.  Guizhou-Guangdong HVDC project (Siemens)

27              v.   3G-Shanghai HVDC project (ABB)

28              vi.  Yunnan-Guangdong HVDC project (Siemens)

vii. Xiangjiaba-Shanghai HVDC project (ABB is the main supplier, and Siemens is the sub-supplier of the local supplier for one station valve and transformer.)

65.     The price-fixing arrangements between Siemens and ABB are coming to light.  In January 2007, Siemens was fined € 396 million by the EU as the leader of a cartel involving 11 companies for rigged bids in procurement contracts, fixed prices and the exchange of confidential information relating to EU electricity markets, over a 16 year period, together with ABB, Alstom, Fuji, Hitachi Japan, AE Power Systems, Mitsubishi Electric Corp, Schneider, Areva, Toshiba and VA Tech.   More recently, on October 7, 2009, the EU fined ABB € 33.75 million over claims that ABB divided European and Japanese markets for electric-power transformers through a cartel with and among Siemens AG, Areva SA, Alstom SA, Toshiba Corp., Hitachi Ltd. and Fuji Electric."

66.     As alleged above, there was a contractual pattern and course of conduct between the parties developed by Defendants to suit Defendants' own internal and external accounting, reporting and auditing procedures.  Plaintiff does not at this time know the exact nature of how Defendants internal and external (either global, regional/hemispheric, regional/international, national, state, local) accounting, reporting and auditing procedures accounted for the payment of expenses and commissions to Plaintiff individually or throughout the entire South China Power Grid.

67.     That the deflection upon Plaintiff to cast Plaintiff in a false light is also an effort to hide the fact that Plaintiff's earned commission was paid to codefendant Ramaswami (which as alleged above, Siemens directly told Plaintiff to obtain her commission money from Ramaswami).  Plaintiff is informed and believes, and based thereon alleges, that the money is still in possession of Defendant Ramaswami and monitored by Siemens and that it remains in the possession of Defendant Ramaswami for this purpose and related to price-fixing.  In this manner, the Defendants can impose financial leverage over Plaintiff to coerce her silence.

# E.

## DAMAGES

68.     As a direct and proximate result of the aforesaid conduct, acts and omissions of Defendants, and DOES 1 through 50, and each of them, inclusive, Plaintiff has not been paid the success commission due and owing to her as alleged in paragraph 56 above.  Plaintiff has not been reimbursed for money expended in performance, Plaintiff has not had the use of the money that should have been paid to Plaintiff, and Plaintiff has been forced to incur expenses for legal representation and other costs, and is informed and believes, and thereon alleges, that she will in the future be forced to incur additional expenses of the same nature, all in an amount which is at present unknown.  Plaintiff will seek leave of court to set forth the actual amount of said losses and expenses according to proof at the time of trial.

69.     As a direct and proximate result of the aforesaid conduct, acts and omissions of Defendants, and DOES 1 through 50, and each of them, inclusive, Plaintiff has or will suffer a loss of income, earnings and earning capacity, past, present and future.  The exact amounts of said losses are unknown to Plaintiff at this time, and Plaintiff will seek leave of court to set forth the actual amount of loss of earnings at the time of trial.

70.     As a direct and proximate result of the aforesaid conduct, acts and omissions of Defendants, and DOES 1 through 50, and each of them, inclusive, Plaintiff did necessarily incur and in the future will incur incidental expenses and damages in an amount and amounts which have not as yet been fully ascertained. Plaintiff will assert the amount of incidental expenses and damages when the same have been ascertained or according to proof, and Plaintiff will seek leave of court to set forth the actual amount of the loss at the time of trial.

71.     As a direct and proximate result of the aforesaid conduct, acts and omissions of Defendants, and DOES 1 through 50, and each of them, inclusive, Plaintiff has been placed in a false light and suffered damage to her reputation both in

1   her personal and professional life.

2       72.    Prior to the false light occurrences alleged herein, Plaintiff was an able-

3   bodied individual, but since, as a direct and proximate result of the aforesaid conduct,

4   acts and omissions of said Defendants, and DOES 1 through 50, and each of them,

5   inclusive, Plaintiff has been unable to engage fully in plaintiff's occupation, and is

6   informed and believes, and thereon alleges, that plaintiff will be incapacitated and

7   unable to perform plaintiff's usual work for an indefinite period of time in the future,

8   all to the plaintiff's damage in an amount which is at present unascertained.

9       73.    As a direct and proximate result of the aforesaid conduct, acts and

10   omissions of Defendants, and DOES 1 through 50, and each of them, inclusive,

11   Plaintiff was rendered with internal and external physical complications from pain to

12   all parts of her body.  Plaintiff has also suffered from extreme mental anguish,

13   depression, physical body upset, and has been rendered sick, sore, lame, infected,

14   disabled, incapacitated and disordered, both internally and externally, and suffered,

15   among other things, internal injuries, severe fright, shock, pain, discomfort, anxiety,

16   and social disgrace.  The exact nature and extent of said injuries are not known to the

17   plaintiff, who will pray leave of the court to insert the same when they are ascertained.

18       74.    As a direct and proximate result of the aforesaid conduct, acts and

19   omissions of Defendants, and DOES 1 through 50, and each of them, inclusive,

20   Plaintiff has been forced to incur expenses for medical care, x-rays and laboratory

21   costs during the period of her disability and is informed and believes, and thereon

22   alleges, that she will in the future be forced to incur additional expenses of the same

23   nature, all in an amount which is at present unknown.  Plaintiff will seek leave of

24   court to set forth the actual amount of loss of earnings at the time of trial.

25       75.    As a direct and proximate result of the aforesaid conduct, acts and

26   omissions of Defendants, and DOES 1 through 50, and each of them, inclusive,

27   Plaintiff has been damaged in ways that are yet unknown and not fully ascertained and

28   damaged in an amount and amounts which have not as yet been fully ascertained.  The

exact amounts of said losses are unknown to Plaintiff at this time, and Plaintiff will seek leave of court to set forth the actual amount of damages at the time of trial.

76.     As a direct and proximate result of the aforesaid conduct, acts and omissions of Defendants, and DOES 1 through 50, and each of them, inclusive, Plaintiff has been damaged in an amount in excess of the jurisdictional minimum of this court.

## FIRST CAUSE OF ACTION

**(Breach of Contract as against Defendants Siemens AG, Siemens Power Transmission and Distribution, LLC and Siemens Corporation USA.)**

77.     Plaintiff incorporates here, as though fully set forth herein, paragraphs 1 through 76, above, inclusive.

78.     Plaintiff has fully performed under all contracts, and if, assuming arguendo, that Plaintiff did not fully perform, then Plaintiff was prevented from performing.

79.     Defendants are obligated under the contract to pay Plaintiff.

80.     Defendants have not paid Plaintiff.

81.     As a direct and proximate result of the aforesaid conduct, acts and omissions of Defendants, and DOES 1 through 50, and each of them, inclusive, Plaintiff has been damaged as alleged in paragraphs 68, 69, 70, 75 and 76 above.

## SECOND CAUSE OF ACTION

**(Breach of Third Party Beneficiary Contract as against all Defendants.)**

82.     Plaintiff incorporates here, as though fully set forth herein, paragraphs 1 through 81, above, inclusive.

83.     As alleged above, Plaintiff asserts that Defendant Siemens directed Plaintiff to collect the success commission due to her from Defendant Velpanur Ramaswami.

84.     Based upon a July 31, 2008, communication from an agent with express authority, Wilfred Breur, Defendant Siemens directed its agent Defendant Velpanur

- 22 -

Ramaswami to pay to Plaintiff the success commission due and owing to Plaintiff. Plaintiff asserts that Defendant Ramaswami accepted the obligation to pay Plaintiff the success commission.

85.    Based on information and belief, the success commission due and owing to Plaintiff were placed by Siemens' into Ramaswami's bank accounts, presumably in Hong Kong, and based on further information and belief, said bank accounts may also be presumably in Switzerland, to be held in trust for and to be paid to Plaintiff.

86.    Both Siemens and Ramaswami have refused to provide details of such a banking transaction or communications regarding the proposed payment of Plaintiff's success commission.

87.    As Plaintiff is a third party beneficiary of said transaction between Defendants Siemens and Ramaswami, all Defendants are obligated to pay to Plaintiff her success commission.

88.    Defendant Siemens' obligation to pay to Plaintiff her success commission has not been discharged or extinguished, nor does Plaintiff discharge or extinguish Siemens from its obligation to perform and pay Plaintiff the success commission under the contract.

89.    No Defendant has paid Plaintiff.

90.    As a direct and proximate result of the aforesaid conduct, acts and omissions of Defendants, and DOES 1 through 50, and each of them, inclusive, Plaintiff has been damaged as alleged in paragraphs 68, 69, 70, 75 and 76 above.

## THIRD CAUSE OF ACTION

### (Conversion as against all Defendants.)

91.    Plaintiff incorporates here, as though fully set forth herein, paragraphs 1 through 90, above, inclusive.

92.    Defendants have wrongfully maintained possession, custody and control of Plaintiff's property, her success commission.

93.   Plaintiff has been denied the use and control of her property, the success commission.

94.   As a direct and proximate result of the aforesaid conduct, acts and omissions of said defendant, and DOES 1 through 50, and each of them, inclusive, Plaintiff has been damaged as alleged in paragraphs 68, 69, 70, 75 and 76 above.

95.   In doing the acts alleged herein, Defendants, and DOES 1 through 50, and each of them, inclusive, acted willfully and recklessly towards Plaintiff to whom they owed a duty, and did so intentionally, wilfully and for Defendants own financial gain as set forth above, at the expense and detriment of Plaintiff entitling Plaintiff an award of exemplary and punitive damages against Defendants according to proof at the time of trial.

## FOURTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and
### Fair Dealing as against all Defendants.)

96.   Plaintiff incorporates here, as though fully set forth herein, paragraphs 1 through 95, above, inclusive.

97.   Based on all of the foregoing allegations in this complaint, the Defendants, and each of them have breached the implied covenant of good faith and fair dealing.

98.   As a direct and proximate result of the aforesaid conduct, acts and omissions of said Defendants, and DOES 1 through 50, and each of them, inclusive, plaintiff has been damaged as alleged in paragraphs 68, 69, 70, 75 and 76 above.

## FIFTH CAUSE OF ACTION

### (False Light as against all Defendants.)

99.   Plaintiff incorporates here, as though fully set forth herein, paragraphs 1 through 98, above, inclusive.

100.   As alleged above, Defendants published false information to cast Plaintiff in a false light to deflect blame away from Defendants' corrupt practices in China and

place the blame unto Plaintiff.

101.   This deflection of blame was published by Defendants to others in the same personal and business circles and related industries and proximately caused Plaintiff to be cast in a false light in her personal life, business and business relationships, past present and future.

102.   Defendants knew and had actual knowledge, at all times including before publishing, at the time of publishing and subsequent to publishing, that Defendants deflection of blame onto Plaintiff was false; and moreover, that casting Plaintiff in a false light would harm Plaintiff personally, in business, economically, culturally and socially.

103.   As a direct and proximate result of the aforesaid conduct, acts and omissions of said Defendants, and DOES 1 through 50, and each of them, inclusive, plaintiff has been damaged as alleged in paragraphs 69 through 76 above.

104.   In doing the acts alleged herein, Defendants, and DOES 1 through 50, and each of them, inclusive, acted willfully and recklessly towards Plaintiff to whom they owed a duty, and did so intentionally, wilfully and for Defendants own financial gain as set forth above, at the expense and detriment of Plaintiff entitling Plaintiff an award of exemplary and punitive damages against Defendants according to proof at the time of trial.

## **PRAYER FOR RELIEF**
## **FOR ALL CAUSES OF ACTION**

1.   For special/economic damages in excess of the minimum jurisdictional limits in amounts according to proof, but not less than $8,000,000.00;

2.   For consequential damages in amounts according to proof;

3.   For incidental damages in amounts according to proof;

4.   For costs of suit incurred herein, and interest as allowed by law in amounts according to proof;

5.   For the value of legal care and attention required, which has been and

will be required in the future in amounts according to proof;

6. For the reasonable value of loss of earnings, income and loss of earning capacity of the improperly withheld in amounts according to proof;

7. For attorneys' fees; and

8. For such other and further relief as the Court deems just and proper.

### ADDITIONALLY FOR THE THIRD CAUSE OF ACTION

9. For restitutionary damages in amounts according to proof.

### ADDITIONALLY FOR THE FIFTH CAUSES OF ACTION

10. For general damages in amounts according to proof.

### ADDITIONALLY FOR THE THIRD AND FIFTH CAUSES OF ACTION

11. For punitive damages in amounts according to proof.

Dated: January 11, 2010.        Respectfully submitted,
LAW OFFICE OF MICHAEL B. MONTGOMERY
LAW OFFICE OF JOSEPH C. MAHER


BY_____
Michael B. Montgomery
Joseph C. Maher II
Attorneys for Plaintiff

### JURY TRIAL DEMANDED

Plaintiff hereby respectfully requests a jury trial in this matter.

Dated: January 11, 2010.        Respectfully submitted,
LAW OFFICE OF MICHAEL B. MONTGOMERY
LAW OFFICE OF JOSEPH C. MAHER


BY:_____
Michael B. Montgomery
Joseph C. Maher II
Attorneys for Plaintiff

COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV10- 174 DDP (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Michael B. Montgomery (CSBN 34310), Law Office
of Michael B. Montgomery, 2627 Mission Street,
Suite #1, San Marino, CA 91108, Tel.:(626)799-0550,
Fax:(626)799-0050, MBMontgomery@hotmail.com
Attorneys for Plaintiff Lauren Sun

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Lauren Sun

PLAINTIFF(S)

v.

Siemens AG; Siemens Power Transmission and Distri-
bution, LLC; Siemens Corporation USA; Velpanur
Ramaswami; and DOES 1 Through 10, inclusive,

DEFENDANT(S).

CASE NUMBER

CV10-00174 DDP (PJWx)

**SUMMONS**

TO:   DEFENDANT(S):  Siemens AG; Siemens Power Transmission and Distribution, LLC;
      Siemens Corporation USA; Velpanur Ramaswami; and DOES 1 Through 10, inclusive,

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, _Michael B. Montgomery_____, whose address is
_2627 Mission Street, Suite #1, San Marino, California 91108,_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated: __11 JAN 2010__

By: _____**SHEA BOURGEOIS**_____

Deputy Clerk

(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Lauren Sun | Siemens AG; Siemens Power Transmission and Distribution, LLC; Siemens Corporation USA; Velpanur Ramaswami; and DOES 1 through 50, inclusive, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Michael B. Montgomery, Law Ofc Michael B. Montgomery, 2627 Mission St., Ste. #1, San Marino, CA 91108 (626)799-0550 / Joseph Maher, Law Ofc Joseph C. Maher, 9025 Wilshire Blvd., 5th Flr, Beverly Hills, CA 90211 (310)204-1910 | Siemens by Brant W. Bishop, P.C., and Tyler Mace, Kirkland & Ellis LLP, 655 Fifteenth Street, N.W., Washington, DC 20005, 777 South Figueroa Street, Los Angeles, CA 90017, (202)879-5959. Ramaswami - unknown. |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☑ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No     ☑ MONEY DEMANDED IN COMPLAINT: $ 8,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☑ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV10-00174

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☐ No ☑Yes
If yes, list case number(s): Case No. 2:09-cv-05597-SJO-SH, Hon. James S. Otero

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
　☐　Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County. | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
　☐　Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| (1) Siemens AG; (2) Siemens Power Transmission and Distribution, LLC; (3) Siemens Corporation USA; (4) Velpanur Ramaswami | (1) Germany and State of Delaware, (2) Delaware, (3) Delaware, and (4) Switzerland |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
　　**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Demand for contractual payment made in Los Angeles County. | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): ＿＿＿＿＿＿＿＿＿＿＿＿　Date January 11, 2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |