C. Robert Boldt (S.B.N. 180136)
robert.boldt@kirkland.com
David I. Horowitz (S.B.N. 248414)
david.horowitz@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Brant W. Bishop, P.C. (*pro hac vice*)
brant.bishop@kirkland.com
Tyler D. Mace (*pro hac vice*)
tyler.mace@kirkland.com
Peter A. Farrell (*pro hac vice*)
peter.farrell@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

*Attorneys for Defendants*
*Siemens AG; Siemens Power Transmission and*
*Distribution, LLC; and Siemens Corporation*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| LAUREN SUN,<br><br>        Plaintiff,<br><br>     vs.<br><br>SIEMENS AG; SIEMENS POWER TRANSMISSION AND DISTRIBUTION, LLC; SIEMENS CORPORATION USA; VELPANUR RAMASWAMI; AND DOES 1 THROUGH 50, inclusive,<br><br>        Defendants. | CASE NO. CV 10-00174 SJO (SHx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SIEMENS AG, SIEMENS POWER TRANSMISSION AND DISTRIBUTION, LLC, AND SIEMENS CORPORATION'S MOTION TO DISMISS**<br><br>The Hon. S. James Otero<br><br>Hearing Date: April 26, 2010<br>Time:       10:00 a.m.<br>Courtroom:  1 - 2nd Floor |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................iii

INTRODUCTION ...................................................................................................1

ARGUMENT ...........................................................................................................2

I.   THE COURT LACKS PERSONAL JURISDICTION OVER
     SIEMENS AG. .................................................................................................2

     A.   Plaintiff Failed to Establish Sufficient Contacts Between
          Siemens AG and California. .................................................................2

     B.   Siemens AG Is Not Subject to General Jurisdiction Based on
          the Contacts of Any Subsidiary Corporation. .....................................6

     C.   Exercising Personal Jurisdiction Over Siemens AG Would
          Be Unreasonable. .................................................................................7

II.  THE COMPLAINT FAILS TO ALLEGE ANY FACTS
     AGAINST SIEMENS CORP. OR SPT&D. ..................................................10

III. THE COMPLAINT FAILS TO STATE ANY VIABLE CLAIMS. ............11

     A.   The Parol Evidence Rule Bars Plaintiff's Contract-Related
          Claims..................................................................................................12

     B.   Plaintiff Waived Her Contract-Related Claims. .................................15

     C.   Plaintiff's Contract-Related Claims Are Time-Barred. ......................15

     D.   The Complaint Fails to State a Claim for Breach of a Third-
          Party Beneficiary Contract..................................................................16

     E.   The Complaint Fails to State a Claim for Conversion........................17

     F.   The Complaint Fails to State a Claim for Breach of the
          Covenant of Good Faith and Fair Dealing. ........................................17

     G.   California's Litigation Privilege Bars Plaintiff's False Light
          Claim. ..................................................................................................18

i

H.    Plaintiff's False-Light Claim Is Time-Barred.....................................19

CONCLUSION ...................................................................................................20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Abraham v. Lancaster Cmty. Hosp.*,
  266 Cal. Rptr. 360 (Ct. App. 1990) ...................................................................... 19

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993) ............................................................................... 4, 9

*Asahi Metal Indus. Co. v. Superior Court*,
  480 U.S. 102, 107 S. Ct. 1026,
  94 L. Ed. 2d 92 (1987) ...................................................................................... 8

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937, 173 L. Ed. 2d (2009) ......................................................... 10, 11

*Banco do Brasil, S.A. v. Latian, Inc.*,
  285 Cal. Rptr. 870 (Ct. App. 1991) .................................................................... 13

*Bauman v. DaimlerChrylser Corp.*,
  579 F.3d 1088 (9th Cir. 2009) ............................................................................ 6

*Becka v. APCOA/Standard Parking*,
  146 F. Supp. 2d 1109 (C.D. Cal. 2001) ......................................................... 13, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955,
  167 L. Ed. 2d 929 (2007) .................................................................................. 10

*Birzer v. The Jockey's Guild, Inc.*,
  444 F. Supp. 2d 1005 (C.D. Cal. 2006) ............................................................ 2, 4

*Brand v. Menlove Dodge*,
  796 F.2d 1070 (9th Cir. 1986) ............................................................................ 4

*Cain v. State Farm Mut. Auto. Ins. Co.*,
  132 Cal. Rptr. 860 (Ct. App. 1976) .................................................................... 19

*Careau & Co. v. Sec. Pac. Business Credit, Inc.*,
  272 Cal. Rptr. 387(Ct. App. 1990) ..................................................................... 18

*Casa Herrera, Inc. v. Beydoun*,
  32 Cal. 4th 336, 83 P.3d 497 (2004) ............................................................. 12, 13

*Congoleum Corp. v. DLW AG*,
  729 F.2d 1240 (9th Cir. 1984) ............................................................................ 4

*Costa v. Superior Court*,
  204 Cal. Rptr. 1 (Ct. App. 1984) .................................................................. 18, 19

*Doe v. Unocal,*
  248 F.3d 915 (9th Cir. 2001) ................................................................ 6

*eCash Techs., Inc. v. Guagliardo,*
  127 F. Supp. 2d 1069 (C.D. Cal. 2000) ............................................. 11

*FDIC v. British-Am. Ins. Co.,*
  828 F.2d 1439 (9th Cir. 1987) ...................................................... 7, 9, 10

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
  284 F.3d 1114 (9th Cir. 2002) .................................................... passim

*Helicopteros Nacionales de Colum., S.A. v. Hall,*
  466 U.S. 408, 104 S. Ct. 1868,
  80 L. Ed. 2d 404 (1984) ....................................................................... 4

*In re Bailey,*
  197 F.3d 997 (9th Cir. 1999) ............................................................. 17

*Jefferson v. J.E. French Co.,*
  54 Cal. 2d 717, 355 P.2d 643  (1960) ............................................... 15

*Kourtis v. Cameron,*
  419 F.3d 989 (9th Cir. 2005),
  *abrogated on other grounds by Taylor v. Sturgell,*
  553 U.S. 880, 128 S. Ct. 2161,
  171 L. Ed. 2d 155 (2008) .................................................................... 16

*Marani v. Jackson,*
  228 Cal. Rptr. 518 (Ct. App. 1986) ................................................... 14

*Marder v. Lopez,*
  450 F.3d 445 (9th Cir. 2006) ............................................................. 15

*Mastafa v. Austl. Wheat Bd. Ltd.,*
  No. 07 Civ. 7955, 2008 WL 4378443,
  (S.D.N.Y. Sept. 25, 2008) .................................................................. 10

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions,*
  No. 07-CV-912, 2007 WL 3047093,
  (S.D. Cal. Oct. 16, 2007). .................................................................. 13

*McGlinchy v. Shell Chem. Co.,*
  845 F.2d 802 (9th Cir. 1988) ............................................................... 2

*Metoyer v. Chassman,*
  504 F.3d 919 (9th Cir. 2007) ...................................................... 13, 14

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797, 105 S. Ct. 2965,
  86 L. Ed. 2d 628 (1985) ..................................................................... 12

*Rubin v. Green,*
  4 Cal. 4th 1187, 847 P.2d 1044, (1993) ............................................. 18

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...................................................................... 2, 3, 4

*Souza v. Westlands Water District*,
    38 Cal. Rptr. 3d 78 (Ct. App. 2006) ..................................................................... 17

*Spacey v. Burgar*,
    207 F. Supp. 2d 1037 (C.D. Cal. 2001) ................................................................. 2

*U.S. Ecology, Inc. v. California*,
    111 Cal. Rptr. 2d 689 (Ct. App. 2001) ................................................................ 17

**Statutes**

Cal. Civ. Code § 1541 ................................................................................................. 15

Cal. Civ. Code § 1625 ................................................................................................. 12

Cal. Civ. Code § 47(b) ................................................................................................ 18

Cal. Civ. Proc. Code § 1856 ...................................................................................... 12

Cal. Civ. Proc. Code § 339(1) .................................................................................... 16

Cal. Civ. Proc. Code § 340(c) .................................................................................... 19

Cal. Labor Code § 2856 .............................................................................................. 17

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 11

Fed. R. Civ. P. 8(a) ..................................................................................................... 10

**Other Authorities**

Restatement (Second) of Contracts § 9 (1981) ......................................................... 16

# **INTRODUCTION**

The Complaint in this case makes two fundamental claims: (1) Siemens AG, Siemens Power Transmission and Distribution, LLC ("SPT&D"), and Siemens Corp. (collectively, the "Siemens Defendants") formed an oral contract with Plaintiff at the same time the parties formed a written contract for the purchase of Plaintiff's services in China; and (2) "Siemens" (not defined in the Complaint) cast Plaintiff in a false light when it published that Plaintiff paid bribes to Chinese government officials, as the U.S. Securities and Exchange Commission ("SEC") alleged in its Foreign Corrupt Practices Act ("FCPA") complaint against Siemens AG.  Plaintiff's claims must be dismissed for at least three reasons.

*First*, Plaintiff has not established personal jurisdiction as to Siemens AG. Here, a Chinese businesswoman is suing a German corporation over a business relationship that occurred in China.   In these circumstances, where none of the pertinent conduct occurred in California, Plaintiff must satisfy the rigorous standards for general jurisdiction.   She has not even attempted to do so, other than to make conclusory allegations of business contacts.   This Court must disregard those conclusory allegations as a matter of law.

*Second*, the documents on which the Complaint relies establish that Plaintiff has no basis for naming Siemens Corp. or SPT&D as a defendant.  Plaintiff thus has not satisfied the threshold requirements of Rule 8(a) with respect to those two entities. The Court therefore can dismiss the Complaint with prejudice against them.

*Third*, Plaintiff fails to state viable claims.  In particular:

- the parol evidence rule bars Plaintiff's effort to enforce an oral contract that is plainly within the scope of her integrated written contract with Siemens AG, thus defeating all of her contract-related claims;

- Plaintiff waived her contract-related claims when she resigned from her work on behalf of Siemens AG;

- Plaintiff's contract-related claims are time-barred;

- Plaintiff's specious claim for breach of a third-party beneficiary contract fails as a matter of law;

1

- Plaintiff's conversion claim, based on her alleged contractual right of payment, fails as a matter of law;

- California does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing; and

- Plaintiff's false light claim is time-barred and barred by California's litigation privilege, as well as the reasons stated in the Siemens Defendants' special motion to strike under California's anti-SLAPP statute.

For all these reasons, the Court should dismiss the Complaint with prejudice.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER SIEMENS AG.

This Court should dismiss the Complaint as to Siemens AG because Plaintiff has not established a *prima facie* basis for asserting personal jurisdiction. *See* Civ. P. 12(b)(2).  In this diversity case, the Court's authority to assert personal jurisdiction over Siemens AG, a German corporation with its principal place of business in Germany, is governed by California's long-arm statute, subject to federal due process limitations. *Birzer v. The Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006) (Otero, J.).

Plaintiff bears the burden of establishing personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  In doing so, she may not rest on the bare allegations of the Complaint, *id.*—particularly those that are no more than bald assertions of legal conclusions, *see, e.g.*, *Spacey v. Burgar*, 207 F. Supp. 2d 1037, 1049 (C.D. Cal. 2001) ("[C]onclusory statements are not enough to satisfy a prima facie showing of jurisdiction without supporting evidence contained in the record.").  Rather, Plaintiff must come forward with ***specific facts*** to establish that Siemens AG maintains sufficient contacts with this forum. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 815 (9th Cir. 1988).  Plaintiff has not.

### A.   Plaintiff Failed to Establish Sufficient Contacts Between Siemens AG and California.

As an initial matter, Plaintiff must establish that Siemens AG is subject to general jurisdiction (as opposed to specific jurisdiction) because, as is plain on the

face of the Complaint, Plaintiff's claims have no connection to California.  This case is about alleged services that Siemens AG purchased from Plaintiff in **China** in connection with **Chinese** government contracts.  Plaintiff fails to allege any relevant act of Siemens AG in this forum and therefore may not rely on specific jurisdiction. *See, e.g.*, *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123-24 (9th Cir. 2002) ("The contracts giving rise to this dispute were negotiated abroad, involved foreign companies, and required performance . . . in India. In short, [plaintiff's] claim does not arise out of conduct directed at or related to California.   Thus, due process forbids the exercise of specific jurisdiction."); *Schwarzenegger*, 374 F.3d at 807 (affirming lack of specific jurisdiction where defendant knew that plaintiff lived in California but defendant's allegedly tortious conduct "was expressly aimed at Ohio rather than California").

The Complaint effectively concedes that Plaintiff must establish general jurisdiction.  The only allegation in the Complaint related to personal jurisdiction over Siemens AG is ¶ 2, which alleges that "Defendant AG has continuous and substantial contacts within the State of California, and conducts extensive business, marketing and commerce in this State and District."   (Compl. ¶ 2.)   That, of course, is the standard for establishing general jurisdiction; Plaintiff fails to allege that Siemens AG is subject to specific jurisdiction.   *See Glencore Grain*, 284 F.3d at 1123.   This distinction is critical: a defendant subject to general jurisdiction can be haled into court in the forum in any and every case, whereas a defendant subject to specific jurisdiction can be haled into court in the forum only in a case relating to or arising out of the defendant's forum contacts.  *See id.*  For that reason, general jurisdiction is an "exacting standard," requiring the plaintiff to establish that the defendant maintains "continuous and systematic general business contacts . . . that approximate **physical presence** in the forum state."   *See Schwarzenegger*, 374 F.3d at 801 (quotation omitted and emphasis added).

Here, Plaintiff's conclusory allegation that Siemens AG "has continuous and

substantial contacts within the State of California, and conducts extensive business, marketing and commerce in this State and District" (Compl. ¶ 2) is simply a legal conclusion.  It cannot establish personal jurisdiction.  Similarly, Plaintiff's vague, naked assertions that Siemens AG "identifies, utilizes and fund [sic] investments in the State of California" (*id.*) and "[t]here are primary offices located in this State, . . . [which] has been a key business target direct [sic] of AG"—even if true—fall well short of establishing that Siemens AG maintains the continuous and systematic business contacts within California necessary to support the exercise of general jurisdiction.  *See, e.g.*, *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984) (holding that defendant's contacts with Texas were insufficient to establish general jurisdiction even though defendant's contacts included "sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services [in Texas] for substantial sums; and sending personnel to . . . facilities in Fort Worth for training").  Indeed, the Ninth Circuit and this Court repeatedly have declined to assert general jurisdiction notwithstanding substantially more robust contacts with the relevant forum.  *See, e.g.*, *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993) ("We . . . have regularly declined to find general jurisdiction even where the contacts were quite extensive."); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases); *Congoleum Corp. v. DLW AG*, 729 F.2d 1240, 1242 (9th Cir. 1984) ("[N]o court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action."); *Birzer*, 444 F. Supp. 2d at 1009 (Otero, J.).

The Ninth Circuit's *Glencore Grain* decision is directly on point.  After concluding that the plaintiff could not rely on specific jurisdiction because its claim related to a wholly foreign business dispute, *Glencore Grain*, 284 F.3d at 1123-24, the Court considered whether the plaintiff had established that the defendant was subject

to general jurisdiction in California.  The Ninth Circuit concluded that the plaintiff failed to meet its burden even though the defendant (Shivnath Rai) had numerous business contacts with California:

> Here, Shivnath Rai's contacts with California amount to the presence of an independently employed sales agent who imports and distributes Shivnath Rai's rice, a 1987 rice shipment into Los Angeles, and the fifteen San Francisco shipments from March 1999 to March 2000.  There is no evidence that Shivnath Rai owns property, keeps bank accounts, has employees, solicits business, or has designated an agent for service of process in California.  Though Shivnath Rai has exported considerable rice through the Port of San Francisco, these contacts seem to constitute doing business *with* California, but do not constitute doing business *in* California.  This is because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.  Put another way, while it is clear that Shivnath Rai has stepped through the door, there is no indication that it has sat down and made itself at home.

*Id.* at 1124-25 (emphasis added and citation, quotation, and footnote omitted).

Plaintiff has not put forward any *facts* to show that Siemens AG maintains a substantial business presence *within* California.  Plaintiff's failure is unsurprising because Siemens AG does not conduct business in California and has not had a business presence here.  (Meitinger Decl. ¶ 3.)  More specifically, Siemens AG:

- is not qualified or registered to do business in California;
- does not maintain an office in California;
- does not employ any personnel in California;
- does not have a telephone listing or mailing address in California;
- does not own any real property in California;
- does not pay any taxes in California;
- does not sell any products or services, or otherwise engage in commerce, in California;
- does not advertise any products or services in California;
- does not maintain any bank or other financial accounts in California; and
- has not authorized or appointed any entity to act as its general agent for accepting service of process of lawsuits in California.

(*Id.*)  Plaintiff thus has not met her burden of establishing a constitutionally sufficient

basis for exercising general jurisdiction over Siemens AG.

**B.    Siemens AG Is Not Subject to General Jurisdiction Based on the Contacts of Any Subsidiary Corporation.**

Similarly, Plaintiff cannot establish that Siemens AG is subject to personal jurisdiction based on the contacts of a subsidiary corporation.  A foreign parent corporation is not subject to personal jurisdiction merely because its subsidiary maintains sufficient contacts with the relevant forum.  *See, e.g.*, *Doe v. Unocal*, 248 F.3d 915, 925 (9th Cir. 2001) ("The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum."); *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094-97 (9th Cir. 2009) (holding that Mercedes Benz USA is not the agent of DaimlerChrysler AG).

On the contrary, the forum contacts of a subsidiary corporation may be imputed to the parent corporation only in the exceptional situation where the parent exerts extraordinary, "pervasive and continual" control over the business operations and affairs of the subsidiary such that the subsidiary may be deemed nothing more than the parent's agent or instrumentality, *see Bauman*, 579 F.3d at 1095, or the subsidiary's existence is effectively a sham and therefore should be considered the parent's alter-ego to avoid fraud or injustice, *see Unocal*, 248 F.3d at 926.

Here, the Complaint makes only the naked assertion that Siemens AG controls its U.S. subsidiaries (Compl. ¶¶ 2-4, 12) and the sweeping contention that all fifty-four defendants (including fifty Doe defendants) were the agent and alter-ego of each other for all purposes (*id.* ¶ 7).  Of course, these conclusory allegations do not establish that Siemens Corp. or SPT&D (now Siemens Energy, Inc.) was the agent or alter-ego of Siemens AG such that the Court may impute their contacts to Siemens AG.  Indeed, as with Plaintiff's allegations regarding Siemens AG's purported jurisdictional contacts, the facts contradict Plaintiff's conclusory pleading:

- Siemens AG does not direct or control the day-to-day operations or management of Siemens Corp. or Siemens Energy;

- Siemens Corp. and Siemens Energy are directed by their own management employees;

- all corporate formalities between Siemens AG, Siemens Corp., and Siemens Energy are observed;

- Siemens AG, Siemens Corp., and Siemens Energy have separate officers and independent boards of directors;

- Siemens AG, Siemens Corp., and Siemens Energy conduct separate board meetings and maintain separate minutes of such meetings;

- Siemens AG, Siemens Corp., and Siemens Energy maintain separate books, records, and financial accounts;

- Siemens AG, Siemens Corp., and Siemens Energy have separate headquarters, files, and office space;

- transactions between the companies are conducted on an arms-length basis and are recorded by appropriate entries in the books and records of the companies in accordance with generally recognized accounting principles;

- Siemens AG is not responsible for paying the United States taxes (whether federal, state, or local) of Siemens Corp. or Siemens Energy; and

- neither Siemens Corp. nor Siemens Energy is responsible for paying taxes owed in Germany by Siemens AG.

(Meitinger Decl. ¶¶ 5-6.)  Siemens AG therefore is not subject to personal jurisdiction in this forum based on the contacts of Siemens Corp. or Siemens Energy, Inc.

## C.   Exercising Personal Jurisdiction Over Siemens AG Would Be Unreasonable.

In addition, asserting personal jurisdiction over Siemens AG would be unreasonable.  Courts in this Circuit use seven factors to examine this issue.  *See, e.g.*, *FDIC v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987) (listing factors).

### 1.   Siemens AG Has Not Purposefully Injected Itself Into California.

As explained above, Siemens AG's contacts with California are nonexistent or highly attenuated.  More important, Siemens AG has had no contacts with this forum that are relevant to Plaintiff's claims.  None of the relevant facts occurred here, let alone any purposeful act by Siemens AG.  *See id.* at 1443.  Every operative fact alleged in the Complaint occurred in Asia or in Europe.

7

2.   The Burden on Siemens AG Demonstrates That Exercising Personal Jurisdiction Would Be Unreasonable.

As the Supreme Court has recognized, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987).  The burden on Siemens AG of having to litigate in a foreign county is self-evident.   This litigation requires extensive consultation between U.S. lawyers and German clients many time zones away, who must deal with foreign language, law, and procedures.  "In a case such as this, in which the defendant has done little to reach out to the forum state, the burden of defending itself in a foreign forum militates against exercising jurisdiction."  *See British-Am. Ins. Co.*, 828 F.2d at 1444 (quotation omitted).

3.   Asserting Personal Jurisdiction Would Conflict With the Sovereignty of China and Germany.

The Supreme Court also has recognized that the sovereign interests of foreign nations and the foreign policy of this nation "will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State."  *See Asahi*, 480 U.S. at 115.   This case relates to Chinese government contracts for the construction of public power-transmission projects and the propriety of Plaintiff's actions vis-à-vis the Chinese government officials who awarded them.   China's sovereign interest in these matters is manifest.   Moreover, "[w]here, as here, the defendant is from a foreign nation, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Glencore Grain*, 284 F.3d at 1126 (quotation omitted).  Thus, the interests of China and Germany are superior to California's interest in this dispute.

4.   California Has Little Interest in Adjudicating This Dispute.

The only interest that California may have in this case is that Plaintiff currently

chooses to reside here (when she is not residing in China).  California's interest ends there.  All of the events at issue in the Complaint occurred outside the United States, and Plaintiff alleges that it was her connections in China and among its business and governmental community that (1) led to her work on behalf of Siemens AG and (2) were damaged by Siemens AG's alleged tortious conduct.  Indeed, it is not clear whether Plaintiff resided in California at all when the events alleged in the Complaint occurred.  "California's interest in adjudicating this suit appears slight" at best.  *Id.*

5.    This Case Would Be Resolved More Efficiently In Another Forum.

"The site where the injury occurred and where the evidence is located usually will be the most efficient forum."  *Leonis*, 1 F.3d at 852 (quotation omitted).  With the exception of Plaintiff, who claims to reside here but maintains substantial connections to China, there are no key witnesses in California.  In particular, Dr. Uriel Sharef—the individual who allegedly promised a success commission to Plaintiff—lives in Germany and, like ***all*** other witnesses, resides beyond this Court's subpoena power. (*See* Meitinger Decl. ¶ 7.)   Litigation here also may require the extensive use of translators, as Siemens AG understands that Plaintiff's native language is Chinese and the native language of Siemens AG's relevant employees is German.  In addition, all or most of the relevant documentary evidence is located outside of the United States (*id.* ¶ 8), requiring the parties and the Court to deal with the well-recognized burdens and complexities of foreign discovery.  *See British-Am. Ins. Co.*, 828 F.2d at 1444.

6.    This Forum Has Little Importance to Plaintiff's Interests.

For similar reasons, this forum has little importance or relevance to the vindication of Plaintiff's alleged interests.  The judicial systems of both China and Germany are fully capable of adjudicating Plaintiff's straightforward claims without the imposition of an unconstitutional burden on Siemens AG and a similar burden on this Court.  *See id.* at 1445 ("It is not clear . . . why the FDIC's recovery would be any less likely in a Fiji court of law.").  In fact, the dispute-resolution clause in the written contract between Plaintiff and Siemens AG provided for a German forum and the

1    application of German law.  (*See* Ex. A to Farrell Decl.)[1]

2              7.    Plaintiff Could Bring Her Claims In Two Alternative Fora.

3         Plaintiff bears the burden of proving the unavailability of an alternative forum.

4    *See British-Am. Ins. Co.*, 828 F.2d at 1445.  She has offered no reason why she could

5    not bring her claims in Germany or in China.  Indeed, it appears that China is as much

6    (or more) her home forum as this Court, and the written contract provides that

7    Germany is the required forum.

8         Taken together, these factors demonstrate that exercising personal jurisdiction

9    would be unreasonable and, for all the foregoing reasons, the Complaint must be

10   dismissed as to Siemens AG.

11   **II.   THE  COMPLAINT  FAILS  TO  ALLEGE  ANY  FACTS  AGAINST**
         **SIEMENS CORP. OR SPT&D.**

12
         The Court should dismiss the Complaint as to Siemens Corp. and SPT&D

13   because Plaintiff has not alleged ***any facts*** against those entities.  *See* Fed. R. Civ.

14   P. 8(a).  As the Supreme Court recently reaffirmed in *Bell Atlantic Corp. v. Twombly*,

15   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 129 S.

16   Ct. 1937, 173 L. Ed. 2d (2009), Rule 8(a) demands that a plaintiff allege a "plausible"

17   factual basis for entitlement to relief rather than "labels and conclusions" and "blanket

18   assertion[s]" of liability.  *See, e.g.*, *Twombly*, 550 U.S. at 555 & n.3.  Plaintiff must

19   satisfy that standard as to ***each*** defendant.  *See Iqbal*, 129 S. Ct. at 1942, 1949, 1952;

20   *Mastafa v. Austl. Wheat Bd. Ltd.*, No. 07 Civ. 7955, 2008 WL 4378443, at *5

21   (S.D.N.Y. Sept. 25, 2008) (dismissing AWB USA where "the complaint ascribe[d]

22   conduct generally to 'Defendants' and to 'AWB'" but "none of [the] conduct [was]

23   plausibly ascribed to AWB USA").   A complaint that fails to satisfy these

24   requirements must be dismissed.  *See Iqbal*, 129 S. Ct. at 1950.

25        On its face, the Complaint alleges a dispute between Plaintiff and Siemens AG.

26   Siemens Corp. and SPT&D appear in just ***one*** substantive paragraph, which makes the

27

28   _____
     [1]    All exhibits cited herein (as "Ex. _") are attached to the Declaration of Peter A.
     Farrell, filed herewith.

                                        10

1   conclusory allegation that "[t]he terms of both Contract 1 and Contract 2 were set and
2   ratified by Uriel Sharef . . . with authority and on behalf of and for Defendants AG,
3   PG, PTD and SCU."  (Compl. ¶ 48.)  Plaintiff's blanket assertion that Siemens Corp.
4   and SPT&D were parties to these alleged contracts must be disregarded when
5   deciding this motion to dismiss.  That is particularly true for SPT&D given that
6   Plaintiff defines the acronym "PTD" in two different ways—once to mean Defendant
7   SPT&D (*id.* ¶ 3) and once to mean the Power Transmission and Distribution division
8   of Siemens AG, which (as Plaintiff admits) is not a separate legal entity (*id.* ¶ 11).

9         In fact, the very documents on which the Complaint relies contradict Plaintiff's
10  claims against Siemens Corp. and SPT&D.[2]  For example:

11        • the "Contract 1" alleged in ¶ 48 is a written contract sent to Plaintiff in
12          China and signed on behalf of "Siemens Aktiengesellschaft."  (Ex. A.)
               Neither Siemens Corp. nor SPT&D is a party to the agreement.

13        • Plaintiff addressed her resignation letter (Compl. ¶ 55(c)) to Siemens AG's
14          Power Transmission & Distribution *division* in Germany.  (Ex. B.)  Again,
               neither Siemens Corp. nor SPT&D appears in the document.

15        • Plaintiff's allegations of false light against the amorphous "Siemens" (not
16          defined in the Complaint) to deflect blame from Siemens' FCPA matters
               (Compl. ¶¶ 58-67) are not allegations against Siemens Corp. or SPT&D
17          because neither entity was a party to an FCPA-related settlement with U.S.
               or foreign law-enforcement authorities.  (*See, e.g.*, Ex. C; Ex. D.)

18  These documents establish that Plaintiff's claims against Siemens Corp. and SPT&D
19  are baseless.  Perhaps Plaintiff believed that joining U.S. subsidiaries would help her
20  cause by imbuing the Complaint with *some* U.S. nexus where otherwise it would have
21  *none*, but Rule 8(a) prohibits such litigation tactics.  Because Plaintiff has not alleged
22  any facts against Siemens Corp. or SPT&D, they must be dismissed with prejudice.

23  **III.   THE COMPLAINT FAILS TO STATE ANY VIABLE CLAIMS.**

24        Apart from jurisdictional and pleading deficiencies, the Court should dismiss
25  each of Plaintiff's causes of action because each fails to state a claim.  *See* Fed. R.
26  Civ. P. 12(b)(6).  As an initial matter, the Siemens Defendants do not concede that

---

[2]     The Court may consider these documents in ruling on this motion and may
disregard the Complaint's allegations if they are contradicted.  *See eCash Techs., Inc.
v. Guagliardo*, 127 F. Supp. 2d 1069, 1075 n.7 (C.D. Cal. 2000).

1   California law applies—or that it constitutionally could govern this case.  *See Phillips*

2   *Petroleum Co. v. Shutts*, 472 U.S. 797, 818, 105 S. Ct. 2965, 2978, 86 L. Ed. 2d 628

3   (1985) ("[F]or a State's substantive law to be selected in a constitutionally permissible

4   manner, that State must have a significant contact or significant aggregation of

5   contacts, creating state interests, such that choice of its law is neither arbitrary nor

6   fundamentally unfair.").   Nevertheless, the Court need not resolve the issue now

7   because Plaintiff's claims fail as a matter of California law.

8         **A.**    **The Parol Evidence Rule Bars Plaintiff's Contract-Related Claims.**

9        The Complaint's first four causes of action relate to an alleged oral contract that

10   flatly contradicts the express terms of a contemporaneously made written contract

11   between Plaintiff and Siemens AG.   In particular, Plaintiff alleges that an alleged

12   representative of the Siemens Defendants (Sharef) simultaneously entered into two

13   separate contracts—one written, one oral—under which Plaintiff provided marketing

14   and liaison services as part of Siemens AG's bids on the Yun Guang HVDC and Xilou

15   Du HVDC projects in China.   The written contract required Siemens AG to pay

16   Plaintiff "a total flat fee of US $60,000 - per annum" and included an integration

17   clause, which required that all "[a]mendments or supplements to this agreement . . . be

18   made in writing to be effective."  (*See* Ex. A at 5.)  Plaintiff admits that Defendants

19   (meaning Siemens AG, the only counterparty to the contract) more than satisfied their

20   obligation under the written contract.  (Compl. ¶ 51.)  Now, notwithstanding the

21   written contract's unambiguous terms, Plaintiff contends that the Siemens Defendants

22   breached a separate-but-contemporaneous oral promise to pay her a 1% success

23   commission for the same work in connection with the same projects.   The parol

24   evidence rule bars Plaintiff's contract-related claims.

25        The parol evidence rule "establishes that an integrated written agreement

26   ***supersedes*** any prior or contemporaneous promise at variance with the terms of that

27   agreement."  *See Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 346, 83 P.3d 497,

28   504 (2004); Cal. Civ. Proc. Code § 1856; Cal. Civ. Code § 1625.  Therefore, "any

1   alleged oral agreement" within the scope of the written agreement "**no longer exists**"

2   as a matter of law, "effectively immuniz[ing]" a party from liability for prior or

3   contemporaneous contradictory statements.  *See Casa Herrera*, 83 P.3d at 504.  Under

4   California law, determining whether an agreement is integrated is a question of law

5   that may be decided on a motion to dismiss.  *See Mat-Van, Inc. v. Sheldon Good &*

6   *Co. Auctions*, No. 07-CV-912, 2007 WL 3047093, at *5-*6 (S.D. Cal. Oct. 16, 2007).

7        The "central question in determining whether there has been an integration, and

8   thus whether the parol evidence doctrine applies, is whether the parties intended their

9   writing to serve as the exclusive embodiment of their agreement."  *Metoyer v.*

10  *Chassman*, 504 F.3d 919, 935 (9th Cir. 2007).  An express integration clause, such as

11  is present here, is virtually conclusive on this issue.  *See, e.g.*, *Banco do Brasil, S.A. v.*

12  *Latian, Inc.*, 285 Cal. Rptr. 870, 886-87 (Ct. App. 1991).  Courts look to four factors,

13  three of which are relevant here: (1) whether the written agreement appears to be

14  complete, (2) whether the oral agreement contradicts the writing, and (3) whether the

15  oral agreement might naturally be made as a separate agreement.[3]  *See Becka v.*

16  *APCOA/Standard Parking*, 146 F. Supp. 2d 1109, 1116 (C.D. Cal. 2001).

17       Here, the doctrine applies, and it bars Plaintiff's oral-contract claims.  **First**, the

18  contemporaneously made written agreement between the Plaintiff and Siemens AG is

19  a complete agreement.  It contains an express integration clause requiring that any

20  changes—including "supplements"—be made in writing.  Moreover, the written

21  contract contains all of the material terms of Plaintiff's work for Siemens AG,

22  including the "total flat fee of US $60,000 - per annum."  *See Metoyer*, 504 F.3d

23  at 935 ("[Defendant] manifested its intent that the agreement be the final embodiment

24  of their agreement by including all material terms: title, salary, benefits, and starting

25  date."); *Becka*, 146 F. Supp. 2d at 1117 ("The comprehensive nature of the

26  compensation and benefits section supports the conclusion that it was a final and

27
28
---
[3]      Courts also consider whether the jury might be misled by the introduction of the parol testimony.  *See Becka*, 146 F. Supp. 2d at 1116.  This factor also demonstrates that the parol evidence rule bars the alleged oral agreement.

13

complete expression of one term of the parties' agreement . . . ."). The written contract therefore is integrated, particularly with respect to Plaintiff's compensation.

*Second*, the alleged oral agreement directly contradicts the terms of the written contract. Plaintiff claims that the Siemens Defendants promised to pay her a 1% success fee in addition to a flat, annual fee; whereas the written agreement expressly provided that Plaintiff's *total* compensation was limited to the flat fee. *See, e.g.*, *Marani v. Jackson*, 228 Cal. Rptr. 518, 522 (Ct. App. 1986) (holding that parol evidence rule barred enforcement of alleged oral promise to pay commission where written agreement provided for the "only remuneration" to be paid).

*Third*, the alleged oral agreement would not have been made as a separate agreement. It is implausible that Siemens AG would have reduced to writing the total amount of Plaintiff's compensation only to separately promise to pay Plaintiff an additional amount for the *same* work—particularly given that the alleged separate promise would have increased Plaintiff's compensation to as much as *134 times* the base value of the written agreement ($8,060,000 versus $60,000). *See id.* at 523 ("It stretches credulity to argue that [plaintiff] could not have amended the commission terms of the written contract to reflect the purported oral agreement."). More broadly, courts repeatedly have held that an additional term regarding employment or similar service would not naturally be made as a separate agreement from the written contract between the parties. *See, e.g.*, *Metoyer*, 504 F.3d at 936; *Becka*, 146 F. Supp. 2d at 1117 ("As the agreements discuss plaintiff's compensation and benefits, it logically follows that the company's [alleged oral] agreement to never change such benefits would be included in the agreement itself.").

As a result, the integrated written contract between Plaintiff and Siemens AG bars enforcement of the oral promise that she alleges. Plaintiff's first cause of action therefore must be dismissed with prejudice. And because the oral promise does not exist as a matter of law, Plaintiff's second, third, and fourth causes of action—which are based on the existence of the oral promise—also must be dismissed with prejudice.

**B.     Plaintiff Waived Her Contract-Related Claims.**

Similarly, Plaintiff's resignation letter to Siemens AG (Compl. ¶ 55(c); Ex. B) defeats all of her contract-related claims because Plaintiff unequivocally released Siemens AG from all obligations, including any alleged oral promise to pay a success commission.  Under California law, a release is the "abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced."  *See Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006).  A release extinguishes an obligation when the release is made either "upon a new consideration, or in writing, with or without new consideration."  *See* Cal. Civ. Code § 1541.  The Court must interpret a release to give effect to the parties' mutual intent as it existed when the release was made.  *See Marder*, 450 F.3d at 449.

Here, Plaintiff abandoned in writing any claims she allegedly had against Siemens AG, including any claims under the oral contract alleged in the Complaint. Plaintiff contends that she had fully performed under the alleged oral contract by the time she resigned, and thus Siemens AG owed her the alleged success commission at that time.  (Compl. ¶¶ 24, 53.)  On that contention, Plaintiff released Siemens AG from its alleged obligation when she wrote "I further confirm that I have no further claims towards Siemens now and future."  (*See* Ex. B.)  Plaintiff's resignation letter therefore bars all of her claims under the alleged oral contract.

**C.     Plaintiff's Contract-Related Claims Are Time-Barred.**

Plaintiff's resignation letter also establishes that all four of her contract-related claims are time-barred.  Under settled law, the applicable statute of limitations for Plaintiff's causes of action is determined by the gravamen of her claims.  *See, e.g.*, *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718, 355 P.2d 643, 644 (1960) ("[T]he nature of the right sued upon, not the form of action of the relief demanded, determines the applicability of the statute of limitations.").  Because the fundamental nature of Plaintiff's contract-related claims is an action for breach of an oral promise, the two-year statute of limitations for actions based on an oral contract applies to her

first four causes of action, including conversion.  *See* Cal. Civ. Proc. Code § 339(1). "Such claims accrue at the time of breach."  *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008).

Plaintiff's contract-related claims are time-barred because she alleges that the Siemens Defendants breached their purported obligation before she resigned on April 10, 2007.[4]  (Compl. ¶¶ 24, 53, 55(c).)  Thus, Plaintiff's claim to the alleged success commission accrued more than two years before July 30, 2009, when Plaintiff filed her first complaint (and, by agreement, the relevant date for statute-of-limitations purposes).  Plaintiff's first four causes of action therefore are time-barred.

### D.   The Complaint Fails to State a Claim for Breach of a Third-Party Beneficiary Contract.

Plaintiff's second cause of action is based on the proposition that two employees of a corporation form an enforceable contract to benefit a third party each and every time one employee obeys his boss's instruction that would benefit a third party.  In particular, Plaintiff attempts to manufacture a cause of action by artfully pleading that two agents or employees of Siemens AG (Wilfried Breuer and Defendant Ramaswami) formed an enforceable contract to benefit Plaintiff when Breuer allegedly asked Ramaswami to "'handle' the success commission on behalf of Siemens" and Ramaswami allegedly accepted.  (*Id.* ¶¶ 55(d), 83-88.)  Plaintiff's claim fails as a matter of law for at least four reasons.

***First***, because the Complaint imputes the conduct of Breuer and Ramaswami to Siemens AG (*e.g.*, *id.* ¶ 84), Plaintiff's claim effectively contends that Siemens AG contracted with itself.  But a contract requires two parties; a contract with oneself is unenforceable.  *See* Restatement (Second) of Contracts § 9 (1981).  ***Second***, Siemens AG could not have discharged its purported contractual obligation to Plaintiff by agreeing to satisfy the obligation itself, with Plaintiff as a creditor beneficiary.  *See*

---

[4]   It appears that Plaintiff actually resigned on June 12, 2007.  (*See* Ex. B.)  The result is the same because more than two years elapsed after that date.

16

*Souza v. Westlands Water District*, 38 Cal. Rptr. 3d 78, 91 (Ct. App. 2006) ("We are aware of no case in which a third-party-beneficiary contract was formed when a promisee bargained for and obtained a promisor's engagement to force the promisee to satisfy its own obligation to the third party.").  **Third**, any alleged contract formed by Breuer and Ramaswami would be unenforceable for lack of consideration.  As an agent or employee, Ramaswami had a pre-existing duty to obey Siemens AG's instructions, *e.g.*, Cal. Labor Code § 2856; compliance therefore could not be the consideration for a new contract, *see U.S. Ecology, Inc. v. California*, 111 Cal. Rptr. 2d 689, 701 (Ct. App. 2001).  **Fourth**, "a third-party beneficiary may not obtain a greater recovery than that which would have been available to the promisee."  *See Souza*, 38 Cal. Rptr. 3d at 91.  The only relief that Siemens AG could have obtained under the alleged contract to benefit Plaintiff would have been enforcement of Siemens AG's agency or employment agreement with Ramaswami, not relief based on the alleged success commission.  Plaintiff's second claim must be dismissed.

## E.    The Complaint Fails to State a Claim for Conversion.

Plaintiff's third cause of action alleges that the Siemens Defendants are liable for conversion because they wrongfully possess her success commission.  (Compl. ¶ 92.)  It is black-letter law, however, that "a mere contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion."  *See, e.g.*, *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999).  Because Plaintiff's conversion claim is indistinguishable from her contract claim, her third cause of action fails as a matter of law.

## F.    The Complaint Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff's fourth cause of action alleges that the Siemens Defendants breached the implied covenant of good faith and fair dealing, although it is unclear whether Plaintiff's claim sounds in contract or in tort.  Both theories fail.  Under California law, a claim for breach of the implied covenant that is based on the same facts as a

breach of contract claim is superfluous and thus fails to state a separate cause of action.  *See Careau & Co. v. Sec. Pac. Business Credit, Inc.*, 272 Cal. Rptr. 387, 400 (Ct. App. 1990).  Moreover, California does not permit recovery in tort for breach of the implied covenant except in the limited context of insurance contracts.  *See id.* at 403.  Plaintiff's fourth cause of action therefore fails as a matter of law.

**G.    California's Litigation Privilege Bars Plaintiff's False Light Claim.**

Plaintiff's fifth cause of action alleges that an undefined "Siemens" cast her in a false light by publishing to the relevant Chinese business community that Plaintiff paid bribes to Chinese government officials in connection with power-transmission projects.  (Compl. ¶¶ 24, 59-60.)  Siemens' motive, Plaintiff alleges, was to deflect blame for its own actions, which were the subject of criminal and civil enforcement actions in the United States.  Plaintiff fails to acknowledge, however, that U.S. enforcement authorities alleged the same information about Plaintiff in their enforcement action against Siemens AG.  (*See* Ex. D at 54, ¶ 46.)  Plaintiff's claim thus seeks to hold Siemens AG liable for statements that relate to the U.S. government's enforcement action.  California's litigation privilege prohibits that result.

As California courts have recognized "[f]or well over a century, communications with 'some relation' to judicial proceedings" are "absolutely immune from tort liability."  *See Rubin v. Green*, 4 Cal. 4th 1187, 1193, 847 P.2d 1044, 1047, (1993).  The source of that absolute immunity is the California litigation privilege, Cal. Civ. Code § 47(b), which "courts have given . . . an expansive reach."  *Rubin*, 847 P.2d at 1047.  In particular, the privilege applies to any statement—even if false or malicious—that had "some connection or logical relation to" a judicial action or official proceeding.  *See, e.g.*, *Costa v. Superior Court*, 204 Cal. Rptr. 1, 3 (Ct. App. 1984) ("The absolute immunity attaches if . . . the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objectives of the litigation; and (4) involved litigants or other

participants authorized by law." (quotation omitted)).  Moreover, the privilege applies even if the communication occurred outside the courtroom or official proceeding— including, for example, a statement made to a third party with a substantial interest in the proceeding.  *See, e.g.*, *Abraham v. Lancaster Cmty. Hosp.*, 266 Cal. Rptr. 360, 377 (Ct. App. 1990).  Any doubt must be resolved in favor of applying the privilege.  *See Costa*, 204 Cal. Rptr. at 3.

Here, Siemens' alleged publication about Plaintiff falls squarely within the litigation privilege.  At the outset, there can be no doubt that the alleged communication about Plaintiff was part of and related to law-enforcement and judicial proceedings.  The government included the same information in its enforcement action against Siemens AG.  (Ex. D at 54, ¶ 46.)  And it is equally true that the recipients of the alleged publication would have had a substantial interest in knowing whether Plaintiff had been involved in public corruption; there is no issue of greater public concern.  The local business community in particular had an obvious interest in knowing whether a business consultant who marketed "special unique . . . relationships [and] contacts" among Chinese government officials with authority to award public contracts (Compl. ¶ 18) had obtained that access through improper means.  The litigation privilege thus applies to Siemens' alleged publication and bars Plaintiff's false-light claim.

## H.    Plaintiff's False-Light Claim Is Time-Barred.

Finally, Plaintiff's false-light claim is time-barred.  California's statute of limitations for false light is one year.  *See* Cal. Civ. Proc. Code § 340(c); *Cain v. State Farm Mut. Auto. Ins. Co.*, 132 Cal. Rptr. 860, 862 (Ct. App. 1976).  Plaintiff alleges that she ended her business relationship with Siemens AG "when Defendants cast Plaintiff in a false light" (Compl. ¶ 24), meaning that the alleged publication occurred before Plaintiff resigned—April 10, 2007, according to the Complaint (Compl. ¶ 55(c)); June 12, 2007, in fact (Ex. B).  In all events, the alleged publication occurred more than one year before Plaintiff filed her first complaint on July 30, 2009.

1  Plaintiff's false-light claim therefore is time-barred.

2  **CONCLUSION**

3  For the foregoing reasons, the Court should dismiss the Complaint with

4  prejudice as to Siemens AG, Siemens Corporation, and Siemens Power Transmission

5  and Distribution, LLC.

6  DATED: March 29, 2010           Respectfully submitted,
                                    KIRKLAND & ELLIS LLP
7

8                                   /s/ C. Robert Boldt
                                    C. Robert Boldt (S.B.N. 180136)
9                                   robert.boldt@kirkland.com
                                    David I. Horowitz (S.B.N. 248414)
10                                  david.horowitz@kirkland.com

11                                  Brant W. Bishop, P.C. (*pro hac vice*)
                                    brant.bishop@kirkland.com
12                                  Tyler D. Mace (*pro hac vice*)
                                    tyler.mace@kirkland.com
13                                  Peter A. Farrell (*pro hac vice*)
                                    peter.farrell@kirkland.com
14
                                    *Attorneys for Defendants*
15                                  *Siemens AG; Siemens Power Transmission and*
                                    *Distribution, LLC; and Siemens Corporation*
16

17

18

19

20

21

22

23

24

25

26

27

28